IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN BILLS, | ) | |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| and | ) | No. 14 C 135-1 |
| | ) | |
| MUNICIPAL EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO, | ) ) | Hon. Virginia M. Kendall |
| | ) | |
| *Third-Party Citation Respondent*, | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARGARET BILLS, | ) | |
| | ) | |
| *Interested Party*. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

On October 23, 2017, the Court granted the Government's Motion for a Turnover Order in this case, directing the Municipal Employees' Annual and Benefit Fund of Chicago ("the Fund") to submit to the Clerk of the Court $266,519.20, which represents Defendant John Bills' nonexempt interest in the refund of pension contributions, as payment toward the more than $2,000,000 in restitution owed by Defendant. (Dkt. 285). Defendant's ex-wife, Margaret Bills, subsequently filed a Motion to Vacate the Court's Turnover Order, claiming she did not receive timely notice of the Government's Motion and that she has an interest in the refund arising from a 2012 divorce decree. (Dkts. 297, 301). After reviewing Margaret Bills' and the Government's filings, the Court granted the Motion to Vacate the Court's Turnover Order, instructed the

1

Government to file a renewed motion as to Margaret Bills and set a briefing schedule on the renewed motion. (Dkt. 316). The Government filed a Renewed Motion of the United States for a Turnover Order as to John Bills, incorporating its prior Motion. (Dkt. 317). For the following reasons, the Court grants in part and denies in part the Government's Renewed Motion. (Dkt. 317).

## BACKGROUND

### I.  The Bills' 2012 Divorce and QILDRO

Margaret and John Bills were divorced in the Circuit Court of Cook County in August of 2012. (Dkt. 320-1). The Bills' Marital Settlement Agreement (MSA), as incorporated into the Judgment for Dissolution, awarded Margaret Bills 50% of the marital portion (representing 36% of the total) of John Bills' pension with the Fund. (*Id.* at ¶ 6.3). On November 15, 2012, the divorce court entered a Qualified Illinois Domestic Relations Order (QILDRO) to effectuate the terms of the Judgment for Dissolution. (Dkt. 320-2). Thereafter, Margaret Bills received monthly pension payments of $3,069.39. (*Id.*).

The QILDRO included, in relevant part for the purposes of Government's present Motion, the following paragraphs which provided that Margaret Bills is entitled to $0.00 of any refund that becomes payable to John Bills:

> **(V)** The Retirement System shall pay to the alternate payee the indicated amounts of any refund upon termination or any lump-sum retirement benefit that becomes payable to the member, under the following terms and conditions:
> 
>     **(A)** The Retirement System shall pay the alternate payee pursuant to one of the following methods **(complete the ONE option that applies):**
> 
>         (1) $\_\_\_\_0.00_____ (enter amount); or
> 
>         (2) _____% (enter percentage) of the marital portion of the refund or lump sum retirement benefit, with the marital portion defined using the formula in Section IX; or

(3) _____% (enter percentage) of the gross amount of the refund or lump sum retirement benefit, calculated when the member's refund or lump sum retirement benefit is paid.

**(B)** The amount payable to an alternate payee under Section V(A)(2) or V(A)(3) shall include any applicable interest that would otherwise be payable to the member under the rules of the Retirement System.

**(C)** The alternate payee's share of the refund or lump sum retirement benefit under this Section V shall be paid when the member's refund or lump sum retirement benefit is paid.

**(VI)** The Retirement System shall pay to the alternate payee the indicated amounts of any partial refund that becomes payable to the member under the following terms and conditions:

**(A)** The Retirement System shall pay to the alternate payee pursuant to one of the following methods **(complete the ONE option that applies)**:

(1) $\_\_\_\_0.00\_\_\_\_(enter amount); or

(2) _____% (enter percentage) of the marital portion of the said benefit, with the marital portion defined using the formula in Section IX; or

(3) _____% (enter percentage) of the gross amount of the benefit calculated when the member's refund is paid.

**(B)** The amount payable to an alternate payee under Section VI(A)(2) or VI(A)(3) shall include any applicable interest that would otherwise be payable to the member under the rules of the Retirement System.

**(C)** The alternate payee's share of the refund under this Section VI shall be paid when the member's refund is paid.

(*Id.*).

Additionally, pursuant to the QILDRO, the state court retained jurisdiction over the QILDRO for the following purposes:

> (XII) . . . (1) To establish or maintain this Order as a Qualified Illinois Domestic Relations Order.
>
> (2) To enter amended QILDROs . . . to conform to the parties Marital Settlement Agreement . . . , to the Parties' Judgment for Dissolution of Marriage . . . , or to any supplemental orders entered to clarify the parties' Agreement or Judgment.
>
> (3) To enter supplemental orders to clarify the intent of the parties or the Court regarding the benefits allocated herein in accordance with the parties' Agreement or Judgment . . . .

(*Id.*).

II.     **Effect of John Bills' Conviction on Pension Payments**

On January 26, 2016, Defendant John Bills was convicted of mail fraud, wire fraud, extortion, conspiracy to commit bribery, bribery, and tax fraud. (Dkt. 149). On September 12, 2016, this Court entered a Judgment against John Bills, sentencing him to 120 months' imprisonment and over $2,000,000 in restitution owed to the City of Chicago. (Dkt. 235). The United States recorded a notice of lien in Cook County on October 14, 2016 (Document No. 1628839127). (Dkt. 317 at 2).

Also in October 2016, the Fund denied John Bills' application for a refund of his contributions to the pension fund, which amount to $266,519.20, explaining that he had forfeited his rights to a pension upon his conviction. (Dkt. 311 at Ex. E-F). On November 23, 2016, Bills filed a suit in state court for administrative review of the Fund's decision to deny his refund application. (Dkt. 281 at ¶ 4). Eventually, on or around October 17, 2017, the state court entered an order finding that, although the monthly pension payments had ceased, there were in fact $266,519.20 in funds returnable on the pension account and that these funds were part of the marital estate. (Dkt. 301 at Ex. 5, ¶ 7).

III.    **The Government's Motion for Turnover Order**

In December 2016 the Government issued to the Fund a Third-Party Citation to Discover Assets of John Bills. (Dkt. 263). On September 22, 2017, the Government filed a Motion for Turnover Order directing the Fund to submit the $266,519.20 representing John Bill's refund to the Clerk of the Court for application to his outstanding restitution judgment. (Dkt. 281). The Fund initially denied possessing any property belonging to John Bills but eventually withdrew its objection to the Motion, citing a change in state law. (Dkt. 300, Tr. 2:9-14).

On October 23, 2017, the Court entered an Order granting the Government's Motion for a Turnover Order. (Dkt. 285). Margaret Bills did not receive notice of the Motion until after it was entered. (*See* Dkt. 307). In December 2017, she retained an attorney (*see id.* at ¶13) and on January 9, 2018, filed a Motion to Vacate the Turnover Order. (Dkt. 297). The Court granted Margaret Bills' Motion to Vacate and the Government filed the present Renewed Motion. (Dkt. 317). Margaret Bills opposes the Renewed Motion, claiming her divorce decree and the QILDRO entitle her to 36% of the refund of John Bills' pension contributions. (Dkt. 320). She does not contest that the Government has a criminal judgment lien as to her ex-husband's 64% interest in the pension fund accounts or make any claim to his interest. (Dkt. 320 at 3).

## IV.  Margaret Bills' State Court Action for Clarification of the QILDRO

Meanwhile, on January 30, 2018, Margaret Bills filed a Motion for Supplemental Order Clarifying the Benefits Allocated Pursuant to QILDRO Entered Herein and for Other Relief (hereinafter, "Motion for Clarification") in state court. (Dkt. 301 at Ex. 4). The Motion for Clarification sought entry of an order finding that, despite the language in Paragraphs (V) and (VI) quoted above, "the intent of the QILDRO was to vest in [Margaret Bills] a 36% interest in the value of the pension account, regardless of whether payment was made on a monthly basis or as a refund of contributions . . . and directing payment to the parties accordingly." (*Id.*). John Bills did not respond to Margaret Bills' Motion. (Dkt. 318 at 2-3).

On February 27, 2018 the state court issued a Supplemental Order, which was then amended on March 7, granting Margaret Bills the relief sought. (Dkt. 320-3). Specifically, the March 7 Corrected Supplemental Order Regarding Qualified Illinois Domestic Relations Order (the "Clarifying Order") stated that a result whereby Margaret Bills was awarded 0% and John Bills awarded 100% of the value of the pension contributions "in the event that subsequent to the

entry of the QILDRO [John Bills] was convicted of a felony and his right to monthly pension payments ended, but not his right to receive the remaining value of his pension account" was "inequitable" and not intended by the parties. (*Id.* at ¶ H). The Order stated also that "it was the express intention of the parties in the QILDRO, as consistent with the terms of the Judgment for Dissolution and MSA, for [Margaret Bills] to receive 36% of the then existing value of the pension account, regardless of source, and the conduct of [John Bills], whether occurring before or after the entry of the Judgment and entry of the QILDRO, did not defeat that award." (*Id.* at ¶ I).

The Order then provided:

> IT IS HEREBY ORDERED:
>
> 1. The benefits to the parties pursuant to the MSA and QILDRO are clarified as follows: Petitioner Margaret Bills is to receive 36% of the remaining value of the retirement account and proceeds thereof, regardless of whether that value comes from contributions or otherwise, and the remaining 64% is allocated to Respondent. Based on the stated total amount of contributions to be refunded ($266,519.20), that would be $95,946.91 to Petitioner and $170,572/29 to Respondent.
>
> 2. The QILDRO is interpreted as consistent with this Order.
>
> 3. Petitioner shall present this order to [the Fund] for its action consistent with the terms herein.

(*Id.*).

Mr. Drexler (Margaret Bills' attorney) provided a copy of the Corrected Supplemental Order to the Fund. (Dkt. 311 at Ex. C). On March 23, 2018, an attorney for the Fund acknowledged receipt of the Corrected Supplemental Order but informed Mr. Drexler that, under Illinois law, "the Fund will require a modified QILDRO in order to effectuate this change (assuming the federal government's criminal restitution lien does not take priority)," citing 40 ICLS 5/1-119(f)(3). (*Id.*). Margaret Bills acknowledges that the Fund has refused to pay her but contends the Fund's legal position is incorrect.

6


**DISCUSSION**

The Government seeks a turnover order against the Fund for $266,519.20 representing the entire refund of pension contributions owed to John Bills. (Dkt. 317). Margaret Bills claims she has an interest in 36% of that refund pursuant to her 2012 QILDRO, as clarified by the 2017 state-court Clarifying Supplemental Order, and that her interest takes priority over the Government's criminal judgment lien interest. (Dkt. 319). The Government, in turn, asserts that Margaret Bills has no present interest in the refund and, even if she did, such interest is subordinate to the Government's lien interest. (*See* Dkt. 318).

I. **The Government's criminal judgment lien interest in the refund has priority over any interest not perfected before October 14, 2016.**

The United States' lien on the pension refund attached on the date of his criminal judgment: September 12, 2016. 18 U.S.C. § 3613(c); *see United States v. Henricks*, 886 F.3d 618, 625 (7th Cir. 2018) ("An order for payment of restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment.") (citing *United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007)). It was subsequently perfected when the Government filed the notice of lien on October 14, 2016. *Kollintzas*, 501 F.3d at 802; 18 U.S.C. § 3613(d). "Liens to pay restitution debts are treated like tax liens, so that they are 'effective against every interest in property accorded a taxpayer by state law.'" *Id.* (quoting *United States v. Denlinger*, 982 F.2d 233, 235 (7th Cir. 1992)). As with a tax lien, upon perfection, the Government's criminal judgment lien on the refund became valid against "any purchaser, holder of security interest, mechanic's lienor or judgment lien creditor." 18 U.S.C. § 3613(d) (citing 26 U.S.C. § 6323). However, these same property-owner classes—purchasers, holders of security interest, mechanic's lienors and judgment lien creditors—are protected against the criminal judgment lien if they acquired an interest in the property *prior* to perfection. *See* 26 U.S.C. § 6323(a). Neither party disputes this. Therefore, the

7

Court must determine whether Margaret Bills' acquired an interest in the pension refund as one of the above-listed property-owner classes prior to the Government's perfecting of its lien on October 14, 2016 and, therefore, has an interest in her claimed portion of the refund that defeats the Government's criminal judgment lien.

**II. Margaret Bills obtained an interest in the pension fund and, for purposes of determining priority, acquired status as a judgment lien creditor of that interest upon entry of the QILDRO on November 15, 2012.**

Neither party disputes also that the QILDRO governs Margaret Bills' interest in the pension funds—including her interest in the refund, if any—or that her interest in the pension was perfected so as to have priority over a later-perfected criminal judgment lien upon entry of the QILDRO. (*See* Dkt. 318 at 5-7; Dkt 320 at 5). Before 1999, public pension funds such as the one at issue here were inalienable under the Illinois Constitution and domestic courts had no authority to distribute benefits from a public pension fund to a non-public employee. *See Smithberg v. Illinois Mun. Ret. Fund*, 735 N.E.2d 560, 567-68 (Ill. 2000). In 1999, the state legislature enacted a statute authorizing domestic courts to effect distribution of public pension benefits to a non-government employee through a QILDRO—similar to a Qualified Domestic Relations Order (QDRO) under ERISA for private pension plans. 40 ILCS 5/1-119; *see Smithberg*, 735 N.E.2d at 586. Additionally, the Illinois Marriage and Dissolution Act recognizes the right to the division of pension benefits—for example, through judgment of dissolution of marriage, whereby the benefits become classified as "non-marital property," 750 ILCS 5/503(a)—and that such right is enforceable under 40 ILCS 5/1-119 through a QILDRO. 750 ILCS 5/503(b)(2); *see also In re Marriage of Menken*, 778 N.E.2d 281, 283 (Ill. App. 2002) ("It is well settled that pension benefits earned during the marriage are considered marital property and, upon dissolution, are subject to division like any other property."). Therefore, the 2012 QILDRO provided Margaret Bills an ownership interest in the portion of the pension benefits distributed to her. *See, e.g., Cullen v.*

8

*Cullen*, No. 00 C 6659, 2001 WL 883692, at *3 (N.D. Ill. Aug. 6, 2001) ("Under Illinois law, each spouse holds ownership rights in the marital property which vest at the time dissolution proceeding are commenced.").

With regard to determining priority, in the context of a private pension plan, the issuance of the QDRO marks the point in time when the ex-spouse obtains the status as a judgement lien creditor whose interest takes priority over a later-perfected tax or criminal judgment lien. *See, e.g., United States v. Taylor*, 338 F.3d 947, 951-52 (8th Cir. 2003) (ex-spouse became judgment lien creditor with priority over later-perfected tax lien on the date the QDRO was entered—*i.e.*, when the identity of the lien owner, the property subject to the lien, and the amount of the lien are established and, therefore, lien was choate) (citing *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88 (1963)); *Agents Pension Plan of Allstate Ins. Co. v. Weeks*, No. 97 C 2708, 1999 WL 261700, at *5 (N.D. Ill. Apr. 22, 1999) (IRS lien attached before QDRO entered and, therefore, had priority over ex-spouse because "[u]ntil a QDRO is entered by a court, the benefits are still vested in the benefit holder spouse."). The parties both argue that a QILDRO should have the same effect with regard to *public* pension funds, such that Margaret Bills' status as judgment lien creditor and the priority of her interest in the pension fund are marked by the issuance of the QILDRO in 2012. (*See* Dkt. 318 at 5-7; Dkt. 320 at 5). This Court agrees. (*See, e.g.,* Dkt. 318 at Ex A (Nov. 5, 2015 hearing transcript in *United States v. Moreno*, No. 12 CR 459 (finding ex-spouse's interest in public pension fund did not have priority over criminal judgment lien because ex-spouse became judgment lien creditor upon entry of the QILDRO, which did not occur until after the Government perfected its lien))).

The parties dispute, however, whether the November 12, 2012 QILDRO granted Margaret Bills any interest in the *refund* portion of the pension fund now at issue.

### III. The 2012 QILDRO granted MB a 36% interest in the refund.

The Clarifying Order makes clear that the 2012 QILDRO awarded Margaret Bills a 36% interest in the pension refund. Although the QILDRO provides that the Fund shall pay Margaret Bills "$0.00" of any refund or partial refund that becomes payable to John Bills, the state court explicitly retained jurisdiction over the QILDRO both "[t]o enter amended QIDLROs" and "[t]o enter supplemental orders clarifying the intent of the parties" regarding the allocation of benefits. (Dkt. 320-2). In January 2018, Margaret Bill sought and obtained the latter: a "Supplemental Order Clarifying the Benefits Allocated Pursuant to the QILDRO." (Dkt. 301 at Ex. 4). As contemplated in Section VII of the QILDRO, the state-court entered a supplemental order clarifying the intent of the parties and finding that the 2012 QILDRO awarded Margaret Bills a 36% of the pension refund. (Dkt. 320-3). The Clarifying Order explicitly stated that the 2012 QILDRO was to be "interpreted as consistent with this Order" and that Margaret Bills need only present the Order to the Fund "for action consistent with the terms herein." *Id.*

The Government argues Margaret Bills cannot establish her interest in the refund without submitting an amended QILDRO to the Fund. Under Illinois law, a QILDRO shall not be implemented until filed with the retirement system—here, the Fund. *See* 40 ILCS 5/1-119(d)(1). Similarly, a *modified* QILDRO must be filed with the Fund in the same manner a new QILDRO. *Id.* at 5/1-119(f)(3). The Government argues, therefore, that Margaret Bills cannot claim an interest in the refund when she has not filed a modified QILDRO with the Fund and points to the Fund's refusal to distribute her claimed portion of the refund to her as support for this argument. As an initial matter, the Fund's position as to Margaret Bills' interest in the refund is not dispositive on this Court's determination. Second, the law cited by the Government applies only if a *modified* QILDRO, or need for such QILDRO, exists. The Clarifying Order explicitly states that the original 2012 QILDRO is interpreted as consistent with the Order and that Margaret Bills need only submit

10

the Order to the Fund to give effect to the interpretation, thereby eliminating any need for a modified QILDRO. (Dkt. 320-3).

Of course, the Government's primary reason for arguing a modified QILDRO is necessary is because under Illinois law, "the priority of payment of a QILDRO that has been modified to increase the amount of any benefit payable to the alternate payee"—here, Margaret Bills—"shall be based on the date on which the [Fund] receives the modification of the QILDRO." 40 ILCS 5/1-119(f)(3). A modification that does not increase the amount of any benefit, on the other hand, does not affect priority of payment. *Id.* In other words, if Margaret Bills were required to submit a 2017 modified QILDRO that increase her benefit to the pension fund in order to establish her interest in the refund, that interest would be subordinate to the Government's 2016 criminal judgment lien interest. But the Government's argument fails. As already stated, the Clarifying Order eliminates the need for a modified QILDRO. Even if the Fund required a modified QILDRO to give effect to the Clarifying Order, such modified QILDRO would have no effect on the priority determination because it would merely clarify and not *increase* Margaret Bills' benefit under the 2012 QILDRO. Additionally, the Government's alternative argument that the amount of Margaret Bills' lien was not established and, therefore, that her interest was not choate before October 2016 fails for the same reasons. (*See* Dkt. 218 at 8-9 (citing *United States v. New Britain*, 347 U.S. 81, 85 (1954) (Liens "may also be perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.")). The amount of Margaret Bills' lien was established by the 2012 QILDRO; the state court did not change this amount but merely clarified it.

The Government next argues that the Clarifying Order is not binding on this Court because the United States was not a party to the state-court proceeding. (Dkt. 318 at 9). The Full Faith

11

and Credit Clause requires that "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land," including in federal courts. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998). "For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." *Id.* Here, however, because the United States was not a party to the state court judgment and the relative priority of its claim to the refund as against Margaret Bills was not decided by the state court, claim and issue preclusion do not apply. *See Duff v. Cent. Sleep Diagnostics, LLC*, 801 F.3d 833, 842 (7th Cir. 2015) ("[T]he Full Faith and Credit Act does not apply when the claim or issue before a federal court was never actually decided in state court."); *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 457 (1967) ("A state trial court's adjudication of property rights or interests does not conclusively bind a federal court when the United States was not a party to the state court proceeding.").

Nonetheless, even where a federal court is not bound by a state court decision for issue or claim preclusion purposes, the court must give "proper regard" to relevant state court rulings as if it were sitting as a state court. *Estate of Kraus v. C.I.R.*, 875 F.2d 597 (7th Cir. 1989). For example, in *Estate v. Kraus*, a federal tax court considered whether a trust qualified for a marital deduction under the federal tax laws. *Id.* at 600. The parties agreed that the trust as it had been reformed by an Illinois state court would qualify for the deduction but disputed whether the state court's reformation of the trust had been proper under Illinois law. *Id.* The federal tax court ultimately found after considering the relevant documents, stipulated facts and witness testimony heard by the state court that the reformation was not proper and the trust did not qualify for the deduction. *Id.* at 601. The Seventh Circuit affirmed the ruling explaining that, while the Illinois court's

reformation of the trust was not binding on the federal tax court, the federal court was required to give "proper regard" to the Illinois court ruling and that it did so. *Id.*

Here, there are two issues to be determined: (1) the interpretation of the QILDRO, as determined by state law and terms of the QILDRO itself, and (2) the priority of Margaret Bills' and the Government's claims to the funds in dispute, as determined by federal law. *See Henricks*, 886 F.3d at 626 (Courts apply state law "to determine who owned what property" and then apply federal law "to determine whether the [federal] lien . . . attaches to the relevant property and rights in property."). The state court decided the first issue in its Clarifying Order interpreting the QILDRO and was entirely within its jurisdiction as expressly provided by the QILDRO to do so. As stated above, the Clarifying Order establishing Margaret Bills' interest in the refund as of August 2012 is not binding on this Court's priority determination. However, the Court gives the Order its "proper regard" and finds no reason for reaching a different conclusion.

The Government contends that the Clarifying Order is unreliable for various reasons, including because Margaret Bills' motion was uncontested (Dkt. 318 at 9), failed to "make[] clear that anyone but John Bills had an *immediate* or *consequential* interest in the refund" (*id.* at 12 (emphasis in original)), and failed to reveal that the Margaret Bills intended to use the Order to challenge the Government's criminal judgment lien interest. (*Id.* at 4). The Government also argues the Clarifying Order is unreliable because it is unclear from the record whether the state court "examined the motion both as to its merits and as to its jurisdiction." (*Id.* at 9). The Court finds none of these arguments convincing.

First and contrary to the Government's position, Margaret Bills' motion sets forth clearly her reason for seeking the clarification, including that John Bills' interest in his pension fund was subject to a criminal judgment lien due to his felony conviction:

13

> 14. [The Fund] apparently has concluded that section V(A) and/or section VI(A) of the QILDRO precludes [Margaret Bills] from sharing the return of contributions. The effect of the [Fund's] position would be that since [John Bill's] rights to monthly annuity payments has been forfeited due to his felony conviction, his wrongful acts result in the entire $266,519.20 refund due on the annuity account to be payable to [John Bills] and none payable to [Margaret Bills]. Further, [John Bills] will not actually receive any portion of said funds, as a lien is in effect as to [John Bill's] interest, and his entire interest will be used to satisfy only a small portion of the almost $2,000,000.00 he owes in restitution ordered by the federal court in connection with his felony convictions.

(Dkt. 302 at ¶ 14). Additionally, Margaret Bills explained in her Response to the Government's Motion that the Court provided John Bills additional time to respond to the motion if he wanted to do so but he did not and that she informed the Court during a hearing in February 2017 that she expected further litigation in federal court on the restitution issue even after the state court was entered. (Dkt. 318 at 10). She explained also that before ruling on her Motion, the state court judge stated in open court that she had reviewed the motion and attached exhibits and had examined the divorce court file and then asked Margaret Bills various questions about the motion to gain a more complete understanding of the matter. (*Id.*). The Government has provided no transcript from any hearing before the state court to refute these claims.

Finally, the Government argues that the state court Order was wrongly decided because there is no basis under Illinois law to "remake" or "rewrite" the contract to add a category of property the MSA and QILDRO never included. (Dkt. 11-12). But Margaret Bills' Motion did not seek to rewrite or change the contract; it merely sought for clarification consistent with the intent of the parties. This inescapable fact distinguishes this case from the cases relied on by the Government to support its argument. *See, e.g., In re Marriage of Lewis*, Nos. 1–12–2029 & 1–12–3803, 2015 WL 1514997, *8 (Ill. App. Mar. 31, 2015) (It is a "well-settled principle that courts cannot *remake* the parties' agreement by adding new terms but must enforce them as written.") (emphasis added); *In re Marriage of Belk*, 605 N.E.2d 86, 90 (Ill. App. 1992) ("Courts cannot

14

*rewrite* contracts to suit either party but must enforce the contract terms as written.") (emphasis added); *Wabash, Inc. v. Avnet, Inc.*, 516 F. Supp. 995, 998 (N.D. Ill. 1981) ("As a general rule courts . . . will not *reform* a contract . . . simply because events do not unfold as expected.") (emphasis added). Regardless, the interpretation of a marriage settlement agreement is highly fact-specific such that no single case can be dispositive. *See In re Marriage of Farrell & Howe*, 96 N.E.3d 516, 522 (Ill. App. 2017) ("The interpretation of a marital settlement agreement is fact specific. Accordingly, no single case will be dispositive" as each is "decided under different facts and different applicable statutory provisions.").

Moreover, here unlike in *Estate of Kraus*, there is no evidence as to the parties' intentions besides the QILDRO itself for this Court to review in order to reach a different conclusion than the state court reached. Having implemented the parties' QILDRO in 2012, the state court was in the best position to make determinations as to the parties' intentions at that time. In fact, as the Court has already stressed repeatedly, the state court explicitly retained jurisdiction over the QILDRO for that exact purpose.

The Government provides no convincing reason for the Court to depart from the state court's finding that the 2012 QILDRO granted Margaret Bills a 36% interest in the pension refund. Accordingly, Margaret Bills' interest in the refund as a judgment lien creditor, acquired in 2012, defeats the Government's criminal judgment lien perfected in 2016.

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part the Government's Renewed Motion. (Dkt. 317). The Fund is ordered to pay 64% of Defendant John Bill's refund of pension contributions to the Clerk of the Court. Payment is to have 14 CR 135 written in the

15

lower left corner of the check and be sent to: Clerk of the Court, U.S. District Court, Northern District of Illinois, 219 S. Dearborn St., 20th Floor, Chicago, IL 60604.

                                                                                            _____
                                                                                            Hon. Virginia M. Kendall
                                                                                            United States District Judge

Date: September 20, 2018