IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN BILLS, | ) | |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| and | ) | No. 14 C 135-1 |
| | ) | |
| MUNICIPAL EMPLOYEES' ANNUITY | ) | Hon. Virginia M. Kendall |
| AND BENEFIT FUND OF CHICAGO, | ) | |
| | ) | |
| *Third-Party Citation Respondent*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARGARET BILLS, | ) | |
| | ) | |
| *Interested Party*. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is the Unites States' Motion to Modify Turnover Order (Dkt. 331), seeking to modify the Court's September 20, 2018 Order granting in part and denying in part the United States' Renewed Motion for a Turnover Order as to John Bills (Dkt. 330) pursuant to Federal Rule of Civil Procedure 59(e). For the following reasons, the Government's Motion to Modify (Dkt. 331) is denied.

## BACKGROUND

On January 26, 2016, Defendant John Bills was convicted of mail fraud, wire fraud, extortion, conspiracy to commit bribery, bribery, and tax fraud. (Dkt. 149). On September 12,

1

2016, this Court entered a Judgment against John Bills, sentencing him to 120 months' imprisonment and over $2,000,000 in restitution owed to the City of Chicago. (Dkt. 235).

On May 15, 2018, the Government filed a Renewed Motion for a Turnover Order directing the Municipal Employees' Annuity and Benefit Fund of Chicago (the Fund) to submit 100% of the $266,519.20 representing John Bill's refund of pension contributions made to the Fund to the Clerk of the Court for application to his outstanding restitution judgment. (Dkt. 317). Margaret Bills, ex-wife of John Bills, opposed the Motion arguing that she had a 36% interest in the pension refund pursuant to the Bills' 2012 divorce decree—specifically, the Bills' Marital Settlement Agreement (MSA), as incorporated into the Bills' Judgment for Dissolution, and the Qualified Illinois Domestic Relations Order (QILDRO) issued by the state divorce court to effectuate the terms of the Judgment for Dissolution—and that her interest has priority over the Government's later-perfected criminal judgment lien interest in the refund. (Dkt. 319).

On September 20, 2018, this Court issued an Order granting in part and denying in part the Government's Renewed Motion for a Turnover Order, finding that Margaret Bills has a 36% interest in the pension refund sought by the Government and, therefore, directing the Fund to pay only 64% of the refund to the Clerk of the Court for application to the restitution judgment. (Dkt. 330). The Government filed a Motion to Modify the Court's Order pursuant to Rule 59(e), arguing that the Court erred in finding Margaret Bills has any interest in the refund and seeking a modified order directing the Fund to pay 100% of the refund to the Clerk for application to the restitution judgment. (Dkt. 331).

2

## DISCUSSION

### I. Timeliness

The Court first addresses the threshold matter of whether the Government complied with the strict filing deadline under Rule 59(e). Rule 59(e) requires that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. 59(e). The "time limit for filing a motion under 59(e) is hard and fast—the Federal Rule of Civil Procedure 6(b)(2) prohibits a district court from extending this deadline." *Seifert v. Dominick's Finer Foods, Inc.*, 444 F. App'x 898, 900 (7th Cir. 2009); *see also* Fed. R. Civ. P 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d) and (e), and 60(b).")). To meet this "hard and fast" deadline, a party must file a motion complying with Rule 7(b)(1)—*i.e.*, the motion "must . . . state with particularity the grounds for seeking the order" and "the relief sought." Fed. R. Civ. P. 7(b)(1). "The standard for 'particularity' has been determined to mean 'reasonable specification.'" *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001) (quoting *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977)). The standard "is not very onerous, but a motion that does not articulate a single argument . . . is insufficient," *Siefert*, 444 F. App'x at 900, and "cannot reserve time to file an explanation after the [28] days allowed by Rule 59(b)." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. State of Wis.*, 957 F.2d 515, 516–17 (7th Cir. 1992); *see also Martinez*, 556 F.2d at 820 (7th Cir. 1977) ("[I]f a party could file a skeleton motion and later fill it in, the purpose of the time limitation would be defeated.").

The Government filed its Motion on October 18, 2018, exactly 28 days after the Court issued its ruling on the Motion for a Turnover Order. (Dkts. 330, 331). The Motion indicated the Government would file a supporting legal memorandum prior to presentment and, as promised,

3

the Government filed a Memorandum in Support nearly one month later on November 13, 2018, long after the 28-day deadline under 59(e) had passed. (Dkt. 334). The question becomes, then, whether the timely-filed Motion sufficed to meet the substantive requirements of Rule 7(b) within the timing requirements of Rules 6(b)(2) and 59(e). The Government's Motion, though brief, seeks a modification of the turnover order requiring the Fund to pay 100% versus just 64% of the money it holds toward John Bills' restitution judgment on several bases, including that the Court committed a factual error in failing to recognize the "refund" as a unique kind of property distinguished from the stream of payments addressed in the MSA; erroneously relied on the state court's clarifying order, which amounted to an improper reformation of the MSA; and erred in finding Margaret Bills' lien interest in the refund arose in 2012. (Dkt. 341). The Court finds this Motion sufficiently identifies the relief sought and sets forth the Government's argument in support of such relief with reasonable specificity. *C.f. Talano*, 273 F.3d at 760 (motion offering only broad assertions that "the Court has misapplied fundamental principles of contract law, failed to apply other well-recognized principles, and is in conflict with precedent of the Seventh Circuit construing Illinois state contract law" without any supporting citations failed to satisfy Rule 7(b)(1) and, therefore, Rule 59(e)). The Court, therefore, will consider the Motion and supporting briefs, despite their piecemeal filing.

II.     **Rule 59(e) Motion to Modify**

Rule 59(e) "allows district courts to take a second look at their decisions . . . only within narrow bounds." *See, e.g., Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, No. 17 C 2153, 2018 WL 4679559, at *3 (N.D. Ill. Sept. 28, 2018). For relief under Rule 59(e), the movant must "clearly establish[]: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d

939, 954 (7th Cir. 2013); *see also Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011); *see also, e.g., Silha v. ACT*, Inc., No. 14 C 0505, 2014 WL 11370441, at *1 (N.D. Ill. Dec. 15, 2014) ("Motions under Rule 59(e) serve the limited function of allowing the Court to correct manifest errors of law or fact or consider newly discovered material evidence.") (citation omitted). Rule 59(e) motions "are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (quotation omitted). They are also "not to be used to 'rehash' previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir.2000)). Whether to grant Rule 59(e) motions is entrusted to the sound discretion of the district court. *Miller*, 683 F.3d at 813.

The Government moves for relief on the first ground: that this Court committed manifest errors of law and/or fact. (*See* Dkt. 334). As stated above, the Government must "clearly establish" such "manifest error" to prevail. *Cincinnati Life Ins. Co.*, 722 F.3d at 954. "A 'manifest error' is not demonstrated by the disappointment of the losing party." *Oto*, 224 F.3d at 606. Rather, "[i]t is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.*

First, the Government argues that the Court overlooked the fact that the "monthly payment" mentioned in the MSA and the QILDRO is a kind of property distinct from the "refund" in dispute and that the QILDRO provided that Margaret Bills was to receive no part of any "refund." (Dkt. 334 at 1, 3–5). The Government is simply incorrect. In its Order, the Court both recognized the "monthly payment"/"refund" distinction and expressly acknowledged that the language of QILDRO awarded Margaret Bills no portion of any refund: "The [MSA] . . . awarded Margaret

Bills 50% of the marital portion . . . [t]hereafter, Margaret Bills received *monthly pension payments* of $3,069.39" (Dkt. 330 at 2); Margaret Bills "sought entry of an order finding that . . . the intent of the QILDRO was to vest in [Margaret Bills] a 36% interest in the value of the pension account, *regardless of whether the payment was made on a monthly basis or as a refund* of contributions . . ." (*id.* at 5 (quoting Bill's Motion Clarification) (emphasis added)); "The QILDRO . . . provided that Margaret Bills is *entitled to $0.00 of any refund* that becomes payable to John Bills." (Dkt. 330 at 2 (emphasis added)); "[T]he QILDRO provides that the Fund shall pay Margaret Bills '$0.00' of any refund or partial refund that becomes payable to John Bills . . ." (*id.* at 10). Thus, the Court made no "manifest error" of fact, nor did it misapprehend the facts before it. *See, e.g., Alarm Detection Sys., Inc.*, 2018 WL 4679559, at *3 (rejecting argument that court disregarded certain evidence in dismissing motion where "[t]he court clearly took that allegation into account").

Second, the Government argues that the Court erred in relying on the state court's Clarifying Order because the state court had no valid basis under Illinois law for a clarification of the Bills' MSA. (Dkt. 334 at 6–7). Specifically, the Government argues that state courts may only clarify agreements if they are ambiguous, Margaret Bills failed to identify any ambiguous language in the QILDRO, and, therefore, the Clarifying Order constituted an improper reformation of the QILDRO. (*Id.* at 6). But the state court explicitly retained jurisdiction over the QILDRO "[t]o enter supplemental orders to *clarify the intent of the parties* or the Court regarding the benefits allocated herein *in accordance with the parties' Agreement or Judgment.*" (Dkt. 320-2 at ¶ XII(3) (emphasis added)). The Clarifying Order did exactly that, ruling that:

> [I]t was the *express intention of the parties* in the QILDRO, *as consistent with the terms of the Judgment for Dissolution and MSA*, for [Margaret Bills] to receive 36% of the then existing value of the pension account, regardless of source, and the

6

>conduct of [John Bills], whether occurring before or after the entry of the Judgment and entry of the QILDRO, did not defeat that award.

(Dkt. 320-3 at ¶ H). Thus, the state court acted entirely within the authority vested in it by the parties' Agreement—authority to act that was not conditioned first on whether the language of the Agreement was ambiguous. The Court, therefore, rejects the Government's assertion that the state court committed legal error by doing precisely what it retained jurisdiction through the QILDRO to do.

This conclusion should come as no surprise as the Court reached it once already in its original Order. (*See, e.g.*, Dkt. 330 at 10 ("As contemplated in Section VII of the QILDRO, the state-court entered a supplemental order clarifying the intent of the parties and finding that the 2012 QILDRO awarded Margaret Bills a 36% of the pension refund."); *see also id.* at 13 (The state court "was entirely within its jurisdiction as expressly provided by the QILDRO" to issue a Clarifying Order interpreting the terms of the QILDRO.)). In fact, the Government's 59(e) motion makes the same attacks on the state court's Clarifying Order that it made previously in its briefs supporting its Renewed Motion for Turnover Order. (*Compare, e.g.*, Dkt. 334 at 6 ("Without an ambiguity, there was no legal basis to clarify the Bills' MSA.") *and* Dkt. 318 at 10 ("The presence of ambiguity was a necessary precondition under Illinois law for a court to examine the MSA and clarify its terms.")). This alone precludes relief under Rule 59(e) as it is well-established, as stated above, that Rule 59(e) is not to be used to rehash previously rejected arguments. *See, e.g., Newell v. Alden Vill. Health Facility for Children & Young Adults*, 651 F. App'x 556, 559 (7th Cir. 2016) (no abuse of discretion in denying 59(e) motion where the district court found "that it already had rejected [plaintiff's] argument, reiterated in her motion"); *Oto*, 224 F.3d at 606 (affirming district court's denial of Rule 59(e) motions where the "motions merely took umbrage with the court's ruling and rehashed old arguments"); *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D.

7

282, 288 (N.D. Ill. 1988) ("[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.").

Third, the Government also argues the Court erred in relying on the Clarifying Order which was not binding on the United States instead of conducting its own, independent legal analysis of the QILDRO. Again, the Court has already considered and ruled on this argument. *See, e.g., United States v. Cunningham*, No. 18 CV 50138, 2018 WL 5330478, at *3 (N.D. Ill. Oct. 29, 2018) (denying Rule 59(e) motion finding that, contrary to defendant's claim, the court did in fact addresses issues and arguments on the merits in its ruling on his motion). The Court clearly acknowledged that it was not bound by the state court's ruling. (*See* Dkt. 330 at 13 ("[T]he Clarifying Order establishing Margaret Bills' interest in the refund as of August 2012 is not binding on this Court's priority determination. However, the Court gives the Order its "proper regard" and finds no reason for reaching a different conclusion.")). Contrary to the Government's contention, the Court then went on to conduct an independent analysis with proper regard to the state court Order and found the Government's arguments for departing from the state court's conclusion unconvincing. In particular, the Court found that while Illinois law prohibits reformation of an agreement absent ambiguity, Margaret Bills "merely sought for clarification consistent with the intent of the parties" and "there is no evidence as to the parties' intentions besides the QILDRO itself for this Court to review in order to reach a different conclusion than the state court reached." (*Id.* at 14–15).

The Government argues that in conducting this analysis, the Court disregarded the case law it provided wherein Illinois courts had rejected what the Government characterizes as similar "attempts to argue that explicitly-included kinds of property in an MSA impliedly included other kinds of property not explicitly included." (Dkt 334 at 10 (citing *In re Marriage of Belk*, 605

8

N.E.2d 86 (Ill. App. 1992); *In re Marriage of Farrell & Howe*, 96 N.E.3d 516 (Ill. App. 2017), and In re Marriage of Lewis, 2015 WL 1514997 (Ill. App. 2015))). In its Order, the Court not only considered but specifically distinguished each of these cases, explaining the "inescapable fact" that Margaret Bills' sought merely a clarification and not reformation of the QILDRO "distinguishes this case from the cases relied on by the Government to support its argument." (Dkt. 330 at 14–15 (citing *In re Marriage of Belk*, 605 N.E.2d at 90, *In re Marriage of Farrell & Howe*, 96 N.E.3d at 522, and *In re Marriage of Lewis*, 2015 WL 1514997, *8)). Ultimately, this attack on the Court's consideration of the state court Clarifying Order in its Rule 59(e) motion again merely reiterates the same arguments the Court rejected in its original Order. (*Compare* Dkt. 334 at 10–11 *and* Dkt. 318 at 10–11). The Court, therefore, declines to reconsider its ruling on these grounds. *See, e.g., Alarm Detection Sys., Inc.*, 2018 WL 4679559, at *5 (rejecting challenges to the Court's legal conclusions merely reiterating "arguments the court already heard and considered").

Lastly, the Government argues that even if Margaret Bills has an interest in the refund, the Court erred in finding that her interest has priority over the Government's lien. Specifically, the Government argues that "the interest of both parties [in the refund] would have been perfected only after John Bills' conviction when the right to a refund arose, they would have been perfected simultaneously, and . . . the federal lien is entitled to priority." (Dkt. 334 at 12–13). The Court agrees that where parties' competing lien interests are perfected simultaneously, the Government's lien prevails. *See U.S. By & Through I.R.S. v. McDermott*, 507 U.S. 447, 454–55 (1993). But the Government's position assumes that Margaret Bills' interest in the refund was not perfected until John Bills' conviction in 2016. The Court previously found that Margaret Bill's lien interest was established in 2012. (*See, e.g.,* Dkt. 330 at 11 ("[T]he Government's alternative argument that the

9

amount of Margaret Bills' lien was not established and, therefore, that her interest was not choate before October 2016 fails for the same reasons. . . . The amount of Margaret Bills' lien was established by the 2012 QILDRO; the state court did not change this amount but merely clarified it.")). The Government cites no law contradicting this finding nor claims that the Court disregarded or misapplied controlling precedent on this issue; it only asserts without any support that "[t]he refund arose as a distinct kind of property only after John Bills'[] 2016 conviction." (*Id.* at 11). Rule 59(e) requires that a party "clearly establish" some manifest error of law; bald assertions of law such as the Government makes here do not suffice. *See Cincinnati Life Ins. Co.*, 722 F.3d at 954; *see also, e.g., Local 710 I.B.T. Pension Fund v. United Parcel Serv., Inc.*, No. 02 C 4420, 2003 WL 22462557, at *2 (N.D. Ill. Oct. 29, 2003) ("Undeveloped arguments, like recycled ones, are insufficient to clearly establish 'manifest errors of law or fact' that could warrant relief under Rule 59(e).")

## CONCLUSION

For the reasons stated above, the Court denies the United States' Motion to Modify Turnover Order (Dkt. 331).

_____
Hon. Virginia M. Kendall
United States District Judge

Date: December 20, 2018

10